OPINION OF THE COURT
Eli Wager, J.
The petitioner, Insurance Company of North America moved the court for a permanent stay of the arbitration demanded by Moskowitz, their insured, upon the ground that the vehicle allegedly responsible for the accident was insured.
*1120 Mr. Justice Robbins granted a temporary stay pending a hearing of the preliminary issue of whether the vehicle allegedly responsible for the accident was uninsured. State Farm Mutual Insurance Company was added as a corespondent.
The matter was referred to this court for trial which was conducted on December 17, 1979. The sole witness was Alan Hannoch, an employee of State Farm Mutual Insurance Company.
The following constitutes the court’s findings of fact and conclusions of law pursuant to CPLR 4213.
THE FACTS
On November 20, 1978, one Francis Sabo, a New Jersey resident, was involved in an automobile accident while he was operating a 1973 Mercedes of which he was the registered owner. Samuel Moskowitz was injured as a result of the accident and has filed a claim with the petitioner, Insurance Company of North America, under his uninsured motorist coverage.
Sabo had been insured under a one-year assigned risk policy by State Farm out of its Wayne, New Jersey, office, at an annual premium of $1,379 effective April 24, 1978. On April 27, 1978, Sabo issued a check for $25 to his broker, a Mr. Young. At trial, Alan R. Hannoch, external services supervisor for 12 years at the Wayne office, could not account for the purpose of this check and did not produce any record of a bill from State Farm to Mr. Sabo for $25. Mr. Hannoch could not say when State Farm had received this check or when it was deposited, but he did testify that it was returned to State Farm in July, 1978 for "insufficient funds”.
Between April 24, 1978 and July, 1978, State Farm received two recorded payments from Sabo towards his $1,379 premium — $283 received on May 2, 1978 and $224.99 in July, 1978. Mr. Hannoch testified at trial that no further payments were due until August 29, 1978.
State Farm contends it mailed a notice of cancellation to Sabo on August 2, 1978. Mr. Hannoch could offer no proof of mailing nor was proof of mailing of the cancellation notice offered. No copy of the notice of cancellation allegedly sent to Sabo was produced. The proof offered indicated that a letter was purportedly mailed to 147 Arlington Street whereas the *1121 original application for the policy indicated 142 Arlington Street as the application address. No copy of the actual policy issued to Sabo was produced although subpoenaed. On September 6, 1978, State Farm returned $111.45 to Sabo as unearned premium income. There is also in evidence a carbon copy of a letter State Farm contends it sent to Sabo dated September 11, 1978 which states: "Policy cancelled 8-17-78 due to bounced check * * * as we are unable to reinstate”.
THE ISSUES
This court is presented with two salient questions:
(1) Was the policy issued by State Farm to Francis Sabo in full force and effect on the date of the accident, November 20, 1978?
(2) Was the alleged mailing of a purported notice of cancellation on August 2, 1978 effective to terminate the policy?
ANALYSIS OF STATUTES AND REGULATIONS
Pursuant to New Jersey Statutes Annotated, section 17:29C-7, an insurer may issue a notice of cancellation of an automobile insurance policy because of the insured’s "nonpayment of premium”, defined in New Jersey Statutes Annotated, section 17:29C-6(F) as the "failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums on a policy, or any installment of such premium, whether the premium is payable directly to the insurer or its agent or indirectly under any premium finance plan or extension of credit”.
To be effective, a notice of cancellation specifying nonpáyment of premium as the reason for cancellation must be mailed or delivered by the insurer to the named insured at least 10 days prior to the effective date of cancellation (NJ Stat Ann, § 17:29C-8). Proof of mailing of notice of cancellation to the named insured at the address shown in the policy, shall be sufficient proof of notice (NJ Stat Ann, § 17:29C-10). New Jersey Statutes Annotated, section 17:29C-6(A) (2) provides that this act shall not apply to any policy issued under the automobile assigned risk plan. However, section 11:3-1.19 of the New Jersey Administrative Code provides:
"(b) A company which has issued a policy or a binder under this Plan [New Jersey Automobile Insurance Plan] shall have *1122 the right to cancel the insurance by giving notice as required in the policy or binder if the insured: * * *
"3. Has violated any of the terms or conditions upon the basis of which the insurance was issued: * * *
"5. Has failed to pay any premiums due under the policy.”
In Weathers v Hartford Ins. Group (77 NJ 228), an "assigned risk” case, the New Jersey Supreme Court held that the provisions of section 11:3-1.19 of the Administrative Code are applicable to control "assigned risk” policies issued under the New Jersey Automobile Insurance Plan. Section 19(A) (1) of this Plan’s Manual adds the proviso that "a notice of cancellation for non-payment of premium shall not be effective if payment of the amount due is made prior to the effective date of such notice.”
CONCLUSIONS
All premiums due under Sabo’s policy due prior to August 29, 1978 had been paid and no further premiums were due until that date. The purported notice of cancellation of the insurance dated August 2, 1978, effective as of August 17, 1978 for nonpayment of premium, was, therefore, premature, was not authorized and was invalid.
There is nothing in section 11:3-1.19 of the Administrative Code that would allow cancellation for a dishonored check unless the check was tendered for a premium that was then due. The $25 check issued three days after the policy became effective did not come back to State Farm marked "insufficient funds” until four months later, July 29, 1978. State Farm had accepted two additional premium payments by July, 1978 and has admitted that no further premium was due until August 29, 1978. Therefore, State Farm demonstrated no valid grounds to cancel Sabo’s policy as of August 17, 1978.
New Jersey Statutes Annotated, section 17:29C-8 requires notice of cancellation at least 10 days prior to the effective date and New Jersey Statutes Annotated, section 17:29C-10 provides that sufficient proof of mailing shall be proof of notice. The offered proof of mailing fell far short of the requirements of the statute (cf. Weathers v Hartford Ins. Group, 77 NJ 228, 236, supra).
The policy of insurance issued to Francis Sabo was not validly cancelled and was, therefore, in full force and effect on the date of the accident. Accordingly, the application of Insur *1123 anee Company of North America to stay arbitration is granted.