234 N.J. Super. 175 (1989)
560 A.2d 708
ALICE RUSSELL AND RALPH RUSSELL, PLAINTIFFS-RESPONDENTS,
v.
RUTGERS CASUALTY INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 16, 1989.
Decided June 23, 1989.
*176 Before Judges PRESSLER, O'BRIEN and SCALERA.
Stacey R. Sack argued the cause for appellant.
*177 Susan L. Uttal argued the cause for respondent (Richard L. Group, on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
At issue in this case is whether an insurance carrier providing personal injury protection benefits (PIP) to its insured is required to pay as a part of medical expenses a hospital bill computed pursuant to a diagnosis related group (DRG) as required by N.J.A.C. 8:31B-5.1. The trial judge ruled that the insurance company is required to pay the full hospital bill so computed and awarded counsel fees pursuant to R. 4:42-9(a)(6). The insurance company appeals, and we affirm.
Plaintiff Alice Russell (plaintiff) is insured for PIP benefits under an insurance policy issued by defendant Rutgers Casualty Insurance Company (Rutgers). On April 23, 1986 plaintiff sustained personal injuries in an automobile accident as a result of which medical and hospital expenses were incurred. All of those expenses have now been paid except for the total hospital bill, which has been only partially paid.[1]
Plaintiff was admitted to Kennedy Memorial Hospital on April 23, 1986 and was discharged on April 27, 1986. The total hospital bill was $5,556.27, of which Rutgers paid $1,936.90 leaving a balance of $3,619.37.[2] The DRG assigned to plaintiff's case was 468 which corresponded with the rate that appeared on her bill. The amount paid by Rutgers represents the total charges for plaintiff's room and hospital services as itemized on the final bill, notwithstanding that the bill set forth a DRG amount due of $5,556.27.
*178 Rutgers contends that an insurance carrier obliged to pay for hospital expenses under its PIP coverage is only obliged to pay the itemized charge for those expenses and not the DRG amount due. The trial judge disagreed, and so do we.
The Health Care Facilities Planning Act was enacted in 1971 "to provide for the protection and promotion of the health of the inhabitants of the State, promote the financial solvency of hospitals and similar health care facilities and contain the rising cost of health care services." See N.J.S.A. 26:2H-1 for the declaration of policy. The State Department of Health was designated as the sole agency for comprehensive health planning under the "National Health Planning and Resources Development Act of 1974 (Federal Law 93-641)," 42 U.S.C.A. § 300k et seq. Among the powers given to the Commissioner of the New Jersey Department of Health was to adopt and amend rules and regulations in accordance with the Administrative Procedure Act (N.J.S.A. 52:14B-1 et seq.) with the approval of a health care administration board. N.J.S.A. 26:2H-5b. Pursuant to that authority the Commissioner adopted diagnostic related groups, N.J.A.C. 8:31B-5.1 et seq., which represent categories of hospital in-patients with similar clinical characteristics who can be expected to consume similar amounts of hospital resources. The assignment of a patient to a DRG requires the following information:
1. Principal diagnosis;
2. Secondary diagnosis;
3. Principal and other procedures;
4. Age;
5. Sex;
6. Discharge status.
Each category of information is fully described in the regulation. See N.J.A.C. 8:31B-5.1(b).
In this case there is no dispute that DRG 468 which was assigned to plaintiff's case was the correct DRG and that the amount charged by the hospital was the correct amount for that group, nor is there any challenge to the DRG system of *179 charging. See footnote 3. Rutgers argues that the language of N.J.S.A. 39:6A-2f, defining "hospital expenses," limits the amount which a PIP carrier should pay to the actual cost rather than the DRG rate. That section provides:
f. `Hospital Expenses' means:
(1) The cost of a semiprivate room, based on rates customarily charged by the institution in which the recipient of benefits is confined;
(2) The cost of board, meals and dietary services;
(3) The cost of other hospital services, such as operating room; medicines, drugs, anesthetics; treatments with X-ray, radium and other radioactive substances; laboratory tests, surgical dressings and supplies; and other medical care and treatment rendered by the hospital;
(4) The cost of treatment by a physiotherapist; and
(5) The cost of medical supplies, such as prescribed drugs and medicines; blood and blood plasma; artificial limbs and eyes; surgical dressings, casts, splints, trusses, braces, crutches; rental of wheelchair, hospital bed or iron lung; oxygen and rental of equipment for its administration. [Emphasis supplied.]
The argument of Rutgers is simply that the Legislature has used the word "cost," and this language limits the amount that a PIP carrier is obliged to pay. Rutgers notes that although N.J.S.A. 39:6A-2 was amended in 1983, subdivision f, defining hospital expenses, was not amended to include DRGs. From this Rutgers concludes the Legislature did not intend that definition to include the DRG cost, but rather the actual cost.
The simple answer to this argument is that the "cost" for the services rendered to this plaintiff was the amount billed by the hospital based upon the DRG as mandated by the administrative regulations adopted by the commissioner of health pursuant to the authority of N.J.S.A. 26:2H-5b. Rules and regulations of a state administrative agency, duly promulgated under properly delegated powers, have the force and effect of law. State v. Atlantic City Electric Co., 23 N.J. 259, 270 (1957). Thus administrative rules and regulations have a binding effect on all persons subject to them. They must be obeyed. Rutgers Council v. New Jersey Board of Higher Education, 126 N.J. Super. 53 (App.Div. 1973). Rutgers does not question the force and effect of the regulations as law, but argues that accident victims covered by PIP coverage are only obliged to pay the *180 actual cost exclusive of DRG. From this it is argued that plaintiff would not be obliged to pay the difference herself if the PIP carrier is only obliged to pay the actual cost, as plaintiff contends. It is obvious, however, that the regulations do not reflect an intention to exclude any hospital in-patient regardless of the source of their illness or injuries.
It is, of course, anomalous that N.J.S.A. 26:2H-1 et seq. has among its purposes the containment of the rising cost of health care services, and no one can dispute the concern our Legislature has for the rising cost of automobile insurance. Yet, in this case, application of DRG has resulted in a cost for hospital expense almost three times the actual cost of that expense. However, Theda Betty Radvansky, the billing supervisor for Kennedy Memorial Hospital, testified at trial that there are many cases when the DRG price per case is lower than the actual charges. She noted, "If this particular patient had been in the hospital for 29 days, I can guarantee you that the charges would have been more than the price per case."[3] Rutgers does not suggest that in those instances where the DRG results in a bill that is less than the actual cost that, nonetheless, the PIP carrier is obliged to pay the higher actual cost.
It is evident that the "cost" for hospital expenses in this case was the bill rendered by the hospital for those expenses utilizing the DRG as it was obliged to do under the law. Although the result in this case of such a substantial difference between the actual cost and the DRG is troublesome in the face of health care cost containment and the escalating cost of insurance coverage, the argument of Rutgers cannot withstand *181 scrutiny in the face of the legislative enactments and the administrative regulations. We find no error in the trial judge's conclusion.
Pursuant to R. 4:42-9(a)(6), the attorney for plaintiff made application for counsel fees and submitted a supporting affidavit of services, reflecting a total of 27.75 hours for which she sought compensation at $130 an hour for a total of $3,607.50 plus costs of $100.40. The trial judge accepted the total hours but reduced the cost per hour to $100 and awarded a counsel fee of $2,775 plus the out-of-pocket costs of $100.40. As part of its appeal, Rutgers asserts that the trial judge abused his discretion in awarding these fees and costs.
Rutgers argues that it had raised a valid novel issue which the trial judge noted reflected resourcefulness on the part of someone employed by the carrier in an effort at cost containment. Rutgers points out that the judge said, "And I am cognizant of the fact that you, Mr. Resnick (defendant's attorney), are here doing a zealous job furthering the construction that the defendant company would urge upon the court." From this it is argued that counsel fees should not have been awarded. Rutgers concedes the trial judge had discretion to award counsel fees pursuant to R. 4:42-9(a)6. See Enright v. Lubow, 215 N.J. Super. 306 (App.Div.), certif. den. 108 N.J. 193 (1987) (where counsel fees were not awarded in a case involving a title policy). Several cases have permitted an award of counsel fees to successful claimants in cases involving PIP benefits. See Maros v. Transamerica Insurance Co., 76 N.J. 572 (1978); Cirelli v. The Ohio Casualty Insurance Co., 72 N.J. 380 (1977).[4]
*182 In Stewart by Stewart v. Allstate Insurance Co., 200 N.J. Super. 350 (App.Div. 1985), rev'd on other grounds 103 N.J. 139 (1986), we referred to Maros and Cirelli and said:
Following two cases wherein the Supreme Court itself authorized counsel fees to successful PIP claimants our Legislature passed L. 1983, c. 362, § 8, effective October 4, 1983, providing for payment of `reasonable attorney's fees' to a claimant who prevails in arbitration proceedings for overdue PIP payments. N.J.S.A. 39:6A-5c. Thus, notwithstanding the language of R. 4:42-9(a)(6), in light of the statutory amendment, the nature of personal injury protection coverage and the authorizing of counsel fees by the Supreme Court in such circumstances, we find such fees may be allowed. Id., at 356.
Notwithstanding the asserted good faith of Rutgers in advancing the argument which it characterizes as "novel," plaintiff was obliged to incur substantial counsel fees to enable her to recover PIP benefits to which she was clearly entitled. The fact that the counsel fees awarded are almost as much as the amount in controversy is immaterial, as long as the trial judge found that the amount of time alleged by counsel to have been spent was indeed spent and the cost charged for that time was reasonable. Indeed, it would be self-defeating if plaintiff had to incur substantial legal fees to recover money to which she is entitled, without any possibility of being compensated for all or part of those fees. In this case, the trial judge found the time spent to be correct and reduced the amount of the hourly charge. This circumstance merely suggests that sometimes the effort to establish a principle is costly, particularly if that effort is unsuccessful. There is no reason why plaintiff should be obliged to bear the cost of Rutgers' efforts to establish its immunity from payment of DRG charges.
Finally, we find no merit to Rutgers' suggestion that the trial judge was predisposed to grant counsel fees because of comments made during the course of preliminary discussions looking toward settlement. This simply alerted Rutgers to the potential for an award of counsel fees in the event they were unsuccessful. Our review of the trial and the careful consideration by the trial judge leads us to conclude he had no predisposition in favor of plaintiff nor for the award of counsel fees.
Affirmed.
NOTES
[1] Rutgers paid all of the unpaid bills with the exception of the balance of the hospital bill after plaintiff filed suit.
[2] Included in this balance is a charge of $8 for telephone.
[3] This witness also noted that an appeal mechanism has been established to the state Department of Health from the DRG assigned. Although Rutgers indicated it intended to pursue such an appeal, it apparently did not. Daphne Campbell, a DRG analyst, testified as to how the various forms of treatment are coded and the information that is placed in the computer in order to arrive at the appropriate assigned DRG.
[4] At the time of these decisions the No Fault Act did not explicitly provide for such fees, but it was amended in 1983 to include a provision permitting the court to award counsel fees to a PIP benefit claimant who prevails in an arbitration proceeding. N.J.S.A. 39:6A-5(c).